1  JOHN S. LEONARDO
   United States Attorney
2  District of Arizona
   JONATHAN B. GRANOFF
3  CORY M. PICTON
   LORI L. PRICE
4  Assistant U.S. Attorneys
   United States Courthouse
5  405 W. Congress Street, Suite 4800
   Tucson, Arizona 85701
6  Telephone:  520-620-7300
   Email: jonathan.granoff@usdoj.gov
7  Attorneys for Plaintiff

8           IN THE UNITED STATES DISTRICT COURT

9            FOR THE DISTRICT OF ARIZONA

10
    United States of America,
11
                    Plaintiff,                CR11-00794-TUC-RCC
12
           vs.                                GOVERNMENT'S RESPONSE TO
13                                            DEFENDANT MELISSA SISNEROS'S
    Melissa Sisneros,                         "MOTION FOR DISCLOSURE OF
14                                            BRADY MATERIAL"
                    Defendant.                (Doc. 597)
15

16

17        The government, by and through its attorneys, John S. Leonardo, United

18 States Attorney for the District of Arizona, and Jonathan B. Granoff, Assistant

19 United States Attorney, responds to the defendant's motion to request further

20 discovery.  For the reasons set forth below, the defendant's latest discovery request

21 should be summarily denied.

22

23 Background

24        The defendant, Melissa Sisneros, is one of several defendants who has been

25 charged in a "cash back" mortgage loan origination scheme.  In her most recent

26 motion, the defendant requests alleged "Brady" information. The defendant's

27 motion seeks the production of three categories of records: (1) "Due Diligence

28 Records" conducted by Clayton Holdings, Inc. of subprime loans; (2) information

1   obtained by the Residential Mortgage Backed Securities (RMBS) Working Group
2   relating to alleged "control fraud" by the originating lenders and purchasers in the
3   secondary market; and (3) information on agreements between originating lenders
4   and purchasing lenders. The defendant's motion should be rejected. The defendant
5   appears focused on uncovering evidence that the banks and lenders were
6   indifferent to false statements made in loan applications. Such a focus is not legally
7   relevant to the charges in this case.

8       The defendant previously requested similar information in a prior discovery
9   motion. (*See* Doc. #410).  In the prior motion, she sought information relating to
10  the practices of the "ultimate lender" and the "paper trail." She also sought any
11  information relating to civil actions brought against any of the lenders or their
12  successors. The government responded to that discovery request.  (*See* Doc. #443
13  filed under seal). The defendant filed a reply to the government's response.  *See*
14  doc. #456.

15      The court appears to have issued an order relating to the defendant's
16  previous discovery requests.  (*See* Doc. #493 filed under seal).  To the extent that
17  the defendant has renewed her request for similar information in this motion, the
18  portions of her motion addressing similar issues should be denied because they
19  have already been ruled on by this court. *See* L.R.Civ. 7.2(g)(1)&(2); LRCrim 12.1
20  ("Absent good cause shown, any motion for reconsideration shall be filed no later
21  than (14) fourteen days after the date of the filing of the Order that is the subject of
22  the motion.")

23      The defendant's latest discovery request should also be denied because the
24  request: (1) is not material to any legal defense, (2) does not contain case-specific
25  factual assertions, and (3) is overbroad and unduly burdensome. Additionally, to
26  the extent the information the defendant seeks is in the custody of third parties (i.e.,
27  the information acquired by Clayton Holdings, Inc.), the defendant may, if she
28  actually desires to review such material, seek the subpoena power of the court to

independently obtain such information from the respective third-party entity.

**A. THE EVIDENCE SOUGHT IS <u>NOT</u> MATERIAL TO A LEGAL DEFENSE.**

*Brady v. Maryland*, 373 U.S. 83, 87 (1963) requires the disclosure of information that is favorable to the defendant and "material" to the defendant's guilt. Applying this rule, the Supreme Court has stressed that "[t]he mere possibility that an item of undisclosed information might . . . help [] the defense, or might . . . effect [] the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976). To the contrary, evidence or information is "material" "only if there is a reasonable probability that," if disclosed, "the result of the proceeding [will be] different." *United States v. Bagley*, 473 U.S. 667, 681-82 (1985). Stated differently, the evidence or information must "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). To support a *Brady* claim, the burden is on the defendant to show that the desired evidence is favorable and material to his claim of innocence. *United States v. Taylor*, 802 F.2d 1108, 1118 n. 5 (9th Cir. 1986).

Fed. R. Crim. P. 16, which compels disclosure of information material to the preparation of the defendant's defense, similarly requires the defendant to make a *prima facie* showing of materiality. *United Staes v. Little,* 753 F.2d 1420, 1445 (9th Cir. 1984); *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984) (finding abuse of discretion in district court's overbroad discovery order). Ordering production by the government without any preliminary showing of materiality is inconsistent with Rule 16. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (reversing district court's broad discovery order); *United States v. Richter*, 488 F.2d 170, 174 n. 14 (9th Cir. 1973); *United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013) (a preliminary showing of materiality by the defendant is needed "which requires a presentation of facts which would tend

to show that the government is in possession of information helpful to the defense."). Neither a general description of the information sought nor conclusory allegations of materiality suffice to satisfy the materiality requirement. *Mandel*, 914 F.2d at 1219.

## B. DEFENDANT CONFUSES MATERIALITY WITH RELIANCE

Defendant seeks the production of the requested information in the hopes that she will uncover evidence that the banks and lenders engaged in a pattern of approving loans even though they were aware of, or recklessly indifferent to, false statements made in the loan applications.[1] She argues that because there is evidence that some lenders at times failed to follow their own underwriting standards, the false statements on the loan applications could not be material to any lending decision. (Doc. 597, pg. 3). Unfortunately, defendant's argument suffers from a fatal flaw: she confuses materiality with reliance. Materiality – something that could be capable of influencing the decision of the audience to which it is addressed – is, of course, an essential element of a fraud prosecution. *See Neder v. United States*, 527 U.S. 1, 16-25 (1999) and *United States v. Gaudin*, 515 U.S. 506, 509 (1995).

It is well-settled that reliance has no application in the criminal fraud context. Therefore, the defendant's overly-broad discovery request should be rejected. The government has previously cited in its *Motion in Limine* relating to this topic (*see* Doc. #462, pg. 4), to *United States v. Ovist* 2013 WL 119674 (D. Or. 2013), wherein the defendant argued that the lenders so pervasively disregarded their own underwriting standards that any misrepresentations on the loan

---

[1] The defendant claims that the government will not call as witnesses any representatives from the originating lenders. This is an inaccurate statement. The government may call various representatives from the originating lenders to authenticate the loan files and/or to discuss the factors that could be capable of influencing the lending decision for the originating lender in accordance with the correct legal standard.

- 4 -

application "were irrelevant to the loan approval process[.]" *Id.* at 2. The district court concluded that evidence of any such lender misconduct "would bear only on the question whether the lenders actually relied on the false statements rather than on the materiality of the statements." *Id. Ovist* makes clear that any alleged lender misconduct does not inform whether a borrower's false statement "could have influenced" the lender's decision. As the court stated, "the lender's alleged misconduct regarding their loan underwriting is irrelevant when determining whether Defendant made the alleged false statements with the intent to influence the lenders' decisions." *Id. quoting United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999).

Whether or not a victim relied upon a defendant's false representations is simply irrelevant to prove that the defendant committed fraud. *See Neder*, 527 U.S. at 24-25 (ruling that in the context of a 1341 violation, "justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes"). This is clear from reviewing the elements of wire fraud, which nowhere require the government to prove that the victim relied upon the false statements made by the defendant. *See* 18 U.S.C. § 1343; *see also* Ninth Cir. Model Jury Instr. No. 8.124 (2014 ed.)

As emerges from a straightforward reading of the elements, there is "plainly no place" in the elements for proof of a victim's reliance. *Neder*, 527 U.S. at 25. To meet the materiality requirement, all that the government must show is that the false statement "has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it is addressed." *Id.* at 16; *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008). The subjective impression of the person or entity to whom the misrepresentation was directed is not pertinent as "capable of influencing is an objective test, which looks to the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end." *Peterson*, 538 F.3d at 1070, 1071-1072 (9th Cir. 2008) (citation omitted).

Our Appellate Court has also indicated that "[t]he Supreme Court has confirmed that the government need not prove reliance to establish materiality." *United States v.* Blixt, 548 F.3d 882, 889 (9th Cir. 2008). "[A] misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose." *Id.* (citation omitted).

The Ninth Circuit has long enforced these principles. *See e.g.,United States v. Chen*, 324 F.3d 1103, 1104-1105 (9th Cir. 2003) (Materiality "is tested by whether the false statements could have affected or influenced" the decision-maker; rejecting the notion that the government had to prove that the misrepresentation "would *more likely than not* produced an erroneous decision") (emphasis in original); *United States v. Service Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) ("the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end;" government need not prove that the statement actually influenced a decision, or that the decision-maker relied on the statement) (citation omitted); *United States v. Rasheed*, 663 F.2d 843, 850 (9th Cir. 1981) ("The mail fraud statute does not require proof that anyone has been defrauded.") *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) ("A misrepresentation may be material without inducing any actual reliance.  What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose.") (citations omitted).

Other circuits are in accord. *See e.g., United States v. Johnson*, 139 F.3d 1359, 1364 (11th Cir. 1998) (false statement can be material even if decision maker actually knew or should have known statement was false); *United States v. Boffil-Rivera*, 607 F.3d 736, 741-742 (11th Cir. 2010) ("statement does not have to be relied upon and can be material even if it is ignored and never read."); *Reynolds*, 189 F.3d at 525 (7th Cir 1999) ("Reliance is not an element of proving a § 1344 violation … Evidence that the bank would not have relied on [defendant's]

representations, and instead would have made an exception for him, does not establish that the representations were immaterial; that is, the representations would not have a tendency to influence the bank's decision-making."; *United States v. Moore*, 923 F.2d 910, 917 (1st Cir. 1991) (approving jury instruction that "it is not a defense that the bank might have prevented its losses had it had better 'internal controls or procedures.'")

The relevant question is the objective tendency or capability of a false statement to influence a decision, and not the subjective or actual reliance on that statement by the victim. That is "[b]ecause the focus of the mail fraud statute, like any criminal statute, is on the violator, [and] the purpose of the element of materiality is to ensure that a defendant actually intended to create a scheme to defraud." *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009).

The defendant cites to *United States v. Charikov et al.* CR12-003-LKK, a mortgage fraud case from the Eastern District of California in support of her position concerning her discovery request. In *Charikov*, the district court judge ordered the United States Attorney's Office for the Eastern District of California, in the middle of trial, to undergo a review of millions of documents relating to "Clayton Holdings Inc." within the possession of that particular United States Attorney's Office.

For the reasons set forth above and the reasons that follow, the district court judge in *Charikov* clearly erred in issuing an order for the prosecution to engage in such a fishing expedition.[2]  Several other district courts have correctly reached the opposite conclusion in addressing this issue or similar issues. *See e.g., United States v. Dianne Farmer*, CR11-26-LJO (E.D. Cal. September 16, 2014, doc.# 514) (in denying post-trial motion for new trial and/or production of alleged *Brady* information, which included a request for "Clayton Holdings Inc." and/or RMBS

---

[2]  It appears that the district court in *Charikov* never issued a written opinion supporting the basis for its order.  Therefore, the court's order in that matter is not supported by any other legal authority.

material, the district court concluded that, "the information sought is not material and does not provide a defense to any of the charges upon which the Defendant was convicted[.])"; *United States v. Benchick*, 2014 WL 4181970 (E.D.Mich. 2014) (in denying defendant's motion to compel discovery of lending practices of Washington Mutual and National City Bank, the district court stated, "[d]efendant improperly seeks disclosure of evidence focused on the lending practices of the financial institutions who granted him loans. Such evidence is immaterial to defendant's guilt."); *United States v. Haischer*, 2012 WL 5288006 (D.Nev 2012) (granting government's *motion in limine* to exclude evidence of "lender negligence, evidence that lenders would have granted the loans even if they were aware of alleged misrepresentations, and evidence of a civil suit against the lender arising out of alleged inadequate quality control mechanisms." The court concluded that such evidence "has the real effect of unfair prejudice and confusion and should be excluded under Fed. R. Evid. 403."); *United States v. Maximov*, 2011 WL 4915162 *1-*2 (D. Ariz. 2011) (in context of government's *motion in limine,* the court stated that defendant cannot point to loose lending practices of the victim financial institutions to establish a defense to wire and bank fraud.)[3]; *United States v. Litos*, 2014 WL 2216096 *1, (N.D. Ind. 2014) (denying defendant's motion to compel discovery stating that "[t]he type of evidence [the defendant] describes in his request, information showing that the victim banks in this case actually gave no weight to the defendant's allegedly false statements, would not exculpate him." The court concluded that "how these banks used the false information relates to reliance, not to materiality.") *See also, Ovist,* 2013 WL 119674, *2 ("lender's alleged misconduct regarding their loan underwriting is irrelevant[.]")

---

[3] The court did permit cross-examination of government witnesses who testified regarding lending practices.

1   Because the evidence the defendant hopes to obtain from the government's
2   search and/or review of millions of documents does not undermine the materiality
3   of the defendant's false statements, it is not material to her guilt on the charged
4   offenses, and neither *Brady* nor Rule 16 require the government's production of
5   such material.

## C. DEFENDANT'S SPECULATIVE DISCOVERY REQUEST SHOULD BE DENIED.

9   There has been no evidence at all that the general request for information by
10  the defendant concerns the defendant or the loans at issue.[4]  Mere "'conclusory
11  allegations' without grounding in fact," are insufficient to find the requested
12  information is material to the case. *Santiago*, 46 F.3d at 895. The defendant must
13  show "case-specific facts" that demonstrate the "materiality of the information
14  sought." *Id.* The defendant is on a fishing expedition. The instant case has nothing
15  to do with secondary market or the securitization of loans after they had been
16  originated, and defendant has not been charged with any conduct related to such
17  transactions.  This case is about a "cash back" loan origination fraud scheme.  It is
18  about the defendants lying or knowingly causing lies to be submitted on loan
19  applications at the point of origin when the borrowers borrowed money from the
20  originating lenders, not about what Merrill Lynch or other parties later said in
21  offering documents to investors.

22  Federal courts have rejected materiality claims for information unrelated to
23  the defendant or to the specific crime in question, even if it impeaches a witness in
24  the case. *See e.g., United States v. Collins*, 551 F.3d 914, 926 (9th Cir. 2009)

---

26  [4]   The defendant cites to the statement of facts from the Bank of America settlement.  The
27  statement refers to due diligence vendors who conducted examinations of five pools of loans concerning
    ResMAE Mortgage Corporation, one of the lenders who originated one of the loans in this matter.
28  (Transaction #15 in the Indictment).   Again, the due diligence study of a sampling of ResMAE's
    underwriting practices is completely irrelevant to any material issue in this case.

(rejecting *Brady* claim regarding information that government witness had been threatened and therefore might have had a motive to inculpate defendant, holding that while evidence was "relevant and favorable" to the defendant, it was not material as it was "attenuated" and "tangential to the question of whether [the witness] induced [defendant] to commit the crimes"); *United States v. Ross*, 372 F.3d 1097, 1108-09 (9th Cir. 2004) (agents's illegal conduct in obtaining green card for government witness, offered to show "pattern of governmental misconduct" and in turn to support claim that government improperly induced defendant, was too "attenuated" to be material); *United States v. Abonce-Barrera*, 257 F.3d 959, 969-970 (9th Cir. 2001) (defendant's claim that list of all other cases on which informant worked would be "useful" was insufficient to show materiality).

Defendant's discovery requests are speculative and not tied to the mortgage transactions in this case. Defendant's failure to raise case-specific facts in support of general allegations of materiality is fatal to her discovery request. For this reason alone, the court should deny the defendant's motion to compel.

**D. THE LENDING PRACTICES OF THE LENDERS THAT ACQUIRED THESE LOANS IN THE SECONDARY MARKET ARE NOT MATERIAL TO THE CHARGES.**

The defendant renews her request for information or documentation from the secondary lenders (those who ultimately acquired or assumed the loans) concerning their "agreements" with the originating lender prior to funding.   Again, the defendant confuses the issues. The issue is whether the defendants engaged in a scheme to defraud the originating lenders. If the originating lender incorporated any subsequent lender's funding conditions prior to funding the loan, the lending decision was still based on the originating lender's lending criteria. The

defendant's attempt to send the government on a wild goose chase for irrelevant extraneous information should be rejected. The defendant's further generalized conclusory allegations that she is entitled to this information because of "the issue of fabrication, cutting and pasting, and outright forgery by the originating lenders[,]" (defendant's Motion at pg. 6) should also be rejected because this bare assertion is merely another generalized allegation without any case specific factual support.

## E. THE DEFENDANT'S DISCOVERY REQUEST IS UNDULY BURDENSOME.

The defendant's request is unduly burdensome. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (stating "particularly where, as here, the government has shown that complying with the request would be unduly burdensome, it is incumbent on the district court to consider the government interests asserted in light of the materiality shown"); *United States v. Stone*, 2013 WL 5934346, at *5 (E.D. Cal. 2013) and *United States v. Alas*, 2009 WL 504687, *6 (D. Ariz. 2009) (acknowledging and/or considering the government burden against defendant's arguments of "materiality"). The defendant seems to underestimate the volume of material collected by the RMBS working group. There are millions of documents. It would be extremely burdensome to review and/or turn over this amount of material. To give a context, the current production in this case is over 67,000 pages of discovery. This case was indicted in the Spring of 2011 and has yet to be tried in part because new counsel has recently been appointed. The court granted a continuance of the trial until June, 2015 to allow new counsel to review the discovery that has been produced thus far. With the production and/or review of the present discovery request, this case might never be tried.

///

- 11 -

**F. MUCH OF THE MATERIAL REQUESTED BY THE DEFENDANT COULD LIKELY BE OBTAINED BY A SUBPOENA FROM INDEPENDENT SOURCES.**

Finally, to a large extent the defendant requests records, which, if they exist, presumably would be in the possession of independent sources. For example, the defendant has requested documents that were supplied by Clayton Holdings Inc., requesting any reports Clayton Holdings Inc. produced relating to loans it analyzed for an 18 month period.    Defense counsel has subpoena authority to obtain these materials.  If defense counsel wants the items set forth in her discovery requests, she has the ability to use the subpoena process to request these documents from these independent sources. "*Brady* does not require the government to gather information or conduct an investigation on the defendant's behalf." *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) (holding that "[t]he *Brady* rule does not apply to evidence not in the possession of the government that a defendant would have been able to discover himself through reasonable diligence"); *United States v. Romo*, 914 F.2d 889, 899-900 (7th Cir. 1990) (noting that defendant could have subpoenaed local law enforcement himself); *Litos*, 2014 WL 2216096, at * 7 ("[Defendant] is in a position to pursue information about troubling bank policies himself through reasonable diligence . . . The government isn't suppressing this information. [Defendant] can subpoena Bank [of America] employees if he thinks they will provide relevant testimony").

Since suppression by the government is a necessary element of a *Brady* claim, if the means of obtaining the exculpatory evidence has been provided to the defense so they may "independently proceed to ascertain [any] *Brady* material, the *Brady* claim fails. *United States v. Dupuy*, 760 F.2d 1492, 1501-02 n.5 (9th Cir. 1985); *See United States v. Rodriguez-Andrade,* 62 F.3d 948, 952 (7th Cir. 1995) ("if the evidence is available to the defense through the exercise of reasonable diligence, it is not considered suppressed"); *United States v. Shelton*, 588 F.2d

- 12 -

1242, 1250 n. 14 (9th Cir. 1978) ("This Circuit has indicated in other contexts that some diligence is still required in *Brady* situations.")

      If defense counsel has not independently pursued via subpoena the records created for example, by Clayton Holdings Inc., that demonstrates that such records are not material to her defense. *See United States v. Marashi*, 913 F.2d 724, 733-34 (9th Cir. 1990) (holding suppressed interview notes were not *Brady* as defendant "offer[ed] no reason why he could not have subpoenaed" a witness to learn what was in the interview notes and his "failure to do so belied his bald assertion that knowledge of [what was in the notes] would have materially affected his preparation for trial") (citation omitted).

      For the reasons stated herein, and because the defendant's discovery requests are entirely without merit, this court should summarily deny defendant's motion to compel.

      RESPECTFULLY submitted this 24th day of October, 2014.

JOHN S. LEONARDO
United States Attorney
District of Arizona


*/s/ Jonathan B. Granoff*
JONATHAN B. GRANOFF
Assistant U.S. Attorney

*/s/ Lori L. Price*
LORI PRICE
Assistant U.S. Attorney

*/s/ Cory M. Picton*
CORY PICTON
Assistant U.S. Attorney

1

2

Copy of the foregoing served
electronically or by other means,
this 24th day of October, 2014 to:

3

4

5

Christian J. Kimminau, Esq.
Jeffrey D. Bartolino, Esq.
Elias Damianakos, Esq.
Attorney for defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28